UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PAUL JOHN MAZA,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 2:22-cv-00683-RDP |
| **KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,** | } |
| **Defendant.** | } |

**MEMORANDUM OF DECISION**

Plaintiff Paul John Maza brings this action *pro se* pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed his application for a period of disability and DIB, and alleges he has been disabled since June 9, 2020, due to a combination of medical issues. (Tr. 103, 235-36). Plaintiff's application was initially denied by the Social Security Administration on August 19, 2020, and upon reconsideration on November 19, 2020. (Tr. 103-31). Plaintiff then requested and was granted a hearing via telephone before Administrative Law Judge Clarence Guthrie ("ALJ"). (Tr. 43-81). Plaintiff, Plaintiff's attorney, and a Vocational Expert "VE" were present at the hearing held on July 8, 2021. (Tr. 45). On November 1, 2021, the ALJ issued an unfavorable decision. (Tr.

22-42). Thereafter, Plaintiff requested review of the ALJ's decision, but the Appeals Council denied that request. (Tr. 1-6). After the Appeals Council's denial, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.     Statement of Facts

Plaintiff was 58 years old at the time of the hearing. (Tr. 49, 235). Plaintiff has a high school education and previous work experience as a vehicle leasing and rental manager. (Tr. 48). Plaintiff is married and claims no income coming in from either him or his spouse. (Tr. 51). Plaintiff testified he has not worked since June 9, 2020.[1] (Tr. 53). Plaintiff and his wife share a car, and although Plaintiff retains a valid driver's license he stated that, by choice, he no longer drives. (Tr. 51-52).

Plaintiff alleges disability due to diabetes, autoimmune hepatitis, rheumatoid arthritis, osteoarthritis, and cirrhosis of the liver. (Tr. 59). During the hearing, Plaintiff also testified to suffering from "fibromyalgia and brain fog from the liver." (Tr. 59). Plaintiff stated that his arthritis and alleged fibromyalgia cause pain in his shoulders, elbows, hips, knees, ankles, toes, wrists, and "everything else," resulting in as little as five hours of sleep each night. (Tr. 61-62). Plaintiff further testified that his pain intensifies throughout the day, and he is either lying down or reclining for four hours each day. (Tr. 65).

Plaintiff was diagnosed with rheumatoid arthritis and osteoarthritis, and he is followed by rheumatologist, Dr. Ryan Weldon. (Tr. 875). Dr. Weldon notes that "much of [Plaintiff's] pain is not related to rheumatoid arthritis." (Tr. 900). Dr. Weldon prescribed Imuran (an immunosuppressive antimetabolite), Prednisone (a corticosteroid), and Sulfasalazine (an anti-inflammatory) with Tramadol (an opiate analgesics) as needed. The record shows Plaintiff

---

[1] Plaintiff received unemployment benefits from the state of Georgia in the second, third, and fourth quarters of 2020, as well as the first quarter of 2021.

experienced decreased pain and increased mobility after taking all medications besides the Tramadol, which he chose to exclude. (Tr. 875-876). In June 2020, Plaintiff reported morning stiffness lasting 15 to 30 minutes, and Dr. Weldon notes that Plaintiff's "activities of daily living are carried out without much difficulty." (Tr. 601). The medical records indicate that Plaintiff's musculoskeletal and physical examinations were normal with normal motor strength and tone, normal curvature in his back, and no malalignment or tenderness. (Tr. 31). The medical records further indicate that Plaintiff has full range of motion in his wrists, elbows, shoulders, ankles, knees, hips, and a normal gait and stance. (Tr. 613). Medical notes from Dr. Weldon dated April, 26, 2021, note continued pain, but overall Plaintiff's RA was stable on his medication. (Tr. 900). In April 2021, Dr. Weldon noted "[Plaintiff] has done fair with persistent joint symptoms…denies tender, swollen joints at this time. Activities of daily living are carried out with difficulty. The patient remains on Sulfasalazine, Tizanidine, Imuran, Cymbalta, Prednisone which have been partially effective and well-tolerated." (Tr. 874). Dr. Weldon listed fibromyalgia in his April 2021 impression notes stating Plaintiff "complains of muscular pain in the neck extending into the shoulders as well as widespread generalized pain and severe fatigue." (Tr. 876). (*See* Exs. 3F, 5F, 7F, 8F, 10F, 11F, 13F, 15F, 17F, 19F, and 20F).

Additionally, Plaintiff was seen by Dr. David Fettig for his cirrhosis. (Tr. 406). Plaintiff has experienced severe episodes of epigastric pain, nausea, and vomiting triggered after eating certain foods, but overall, the record shows Plaintiff's cirrhosis as stable. (*Id.*). In September 2020, Dr. Fettig noted Plaintiff was doing well on his medication regimen with no evidence of chronic liver disease and liver enzymes reaching a normal level. (*Id.*). (*See* Exs. 3F, 6F, 11F, 13F, and 21F).

During the hearing, the VE determined that Plaintiff's past relevant work exceeded the residual functional capacity ("RFC") given by the ALJ. (Tr. 33-34). The VE testified that, based on Plaintiff's level of skill gained from past jobs, Plaintiff could perform other sedentary occupations within the given RFC such as sales manager, automotive services manager, and operations manager, which exist in significant numbers in the national economy. (Tr. 77). The VE stated the only job requiring further training beyond skills Plaintiff would already possess is that of operations manager. (Tr. 78). In response, Plaintiff's attorney questioned the VE about an RFC with added stipulations of time off task and absenteeism, which Plaintiff testified would be an issue. (Tr. 79). Because Plaintiff's testimony that he would need to be off task for four hours during the work day conflicted with existing evidence of his capabilities found in the medical records, the ALJ concluded the hearing by ordering an independent doctor perform a physical examination in order to further assess Plaintiff's functional abilities. (Tr. 80). This examination was performed by Dr. Dallas Russell and in the report Dr. Russell opined that Plaintiff "could only occasionally lift or carry up to 10 pounds, sit at only 30 minutes, stand or walk for 15 minutes and in a total 8-hour work day could only perform these tasks to a total of 7 hours." (Tr. 977). However, the ALJ states that this evaluation was only mildly persuasive and of limited usefulness in determining Plaintiff's RFC as it was based largely on history obtained from Plaintiff and not from "objective data from clinical or laboratory diagnostic techniques," and included vague and equivocal limitations such as "[h]e would have difficulty lifting, carrying, pushing, and pulling," and "[h]e is uncomfortable sitting, standing, or walking for long." (Tr. 33, 985).

After a detailed review of the entirety of the medical records, the additional physical examination, and testimony from Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 36).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In

the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 9, 2020, the alleged onset date of disability. (Tr. 27). The ALJ further determined Plaintiff has the severe impairments of osteoarthritis, seropositive rheumatoid arthritis, and cirrhosis. (Tr. 27). However, the ALJ also found that the totality of the evidence did not prove Plaintiff's alleged fibromyalgia or depression to be as severe as described nor to be medically determinable ailments. (Tr. 28-29). The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 29). After careful consideration of the entire record, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he can never climb ladders, ropes, or scaffolds; he can frequently stoop, kneel, crouch, or crawl; frequently reach bilaterally; no exposure to excessive vibration; can occasionally be exposed to weather or humidity; can never be exposed to workplace hazards such as moving mechanical parts and high exposed places. (Tr. 30).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff presents two primary arguments for reversing the decision of the ALJ. First, he contends that the ALJ did not read the entirety of his medical records and thus failed to perform due diligence. (Doc. 14, p. 2). Plaintiff maintains that the ALJ did not address his medical reports

addressing fibromyalgia. *See* Exhibits 5F, 8F, and 10F. (*Id.*). Plaintiff further argues that contrary to the Commissioner's assertions, he did not cite objective evidence to prove his condition of fibromyalgia, and the ALJ erred by not properly assessing that factor. (*Id.*). Second, Plaintiff asserts that the ALJ did not inform the VE of all of the aspects of his condition and therefore, reliance on the VE's testimony was misplaced and the ALJ's RFC is incorrect. (*Id.*).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42, U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*,

7

847 F.2d at 701. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

**V.     Discussion**

    **A.     Plaintiff's Claim That the ALJ Failed to Read the Entire Medical Record is Not Supported by the Evidence.**

Plaintiff first argues that the ALJ failed to read the entire medical record, and therefore did not consider his fibromyalgia to be a medically determinable impairment. (Doc. 14). This argument fails for two reasons.

First, Plaintiff's argument ignores the ALJ's analysis of the fibromyalgia issue:

> In addition, [Plaintiff] alleges fibromyalgia, which is mentioned in the record (Exhibits 8F, 10F, and 22F). Fibromyalgia is a common, but complex medical condition that is characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months. (Tr. 28).

Plaintiff also contends that the ALJ did not specifically discuss Exhibit 18F in his decision, and therefore argues he did not read it. "On page 11 of [] Defendant's brief…they do not comment on my claim that Exhibit 18F lists fibromyalgia as an ailment, or that the ALJ failed to read it." (Doc. 14). However, as the Eleventh Circuit has previously held, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the ALJ's decision properly considered the claimant's condition in its entirety. *Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ also stated during the hearing, "I read your entire file word for word." (Tr. 59).

Second, Plaintiff misconstrues the ALJ's exemption of fibromyalgia on the list of stated ailments during the hearing. Plaintiff believes fibromyalgia is not listed because the ALJ has no knowledge of it; however, it is clear that condition was not addressed because the ALJ reviewed the evidence and found that ailment to be medically undeterminable in this case. (Doc. 14; Tr. 28,

29). The ALJ's decision to find Plaintiff's fibromyalgia was not medically determinable is consistent with substantial evidence in the record and also followed the Commissioner's policy interpretation "in which the agency identifies the objective evidence needed to establish a medically determinable impairment of fibromyalgia and explains the evaluation process to determine if someone is disabled (Social Security Ruling 12-2p)." (Tr. 28). The ALJ's decision included reference to all medically determinable ailments and relevant medical records; therefore, it is evident the ALJ read the medical records in their entirety.

> **B.   The ALJ Properly Weighed the Medical Evidence in the Record and the RFC Assessment is Supported by Substantial Evidence.**

As noted in *Crawford v. Commissioner of Soc. Security*, the ALJ is not required to give authoritative weight to a physician's opinion regarding a claimant's RFC, nor to accept the VE's response to a hypothetical question based on any physician's inadequately supported opinion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The ALJ found that Plaintiff suffers from osteoarthritis, seropositive rheumatoid arthritis, and cirrhosis, and the ALJ considered each of these ailments in his RFC. However, Plaintiff argues that the ALJ excluded important medical evidence by not considering his fibromyalgia as part of the RFC. Plaintiff contends that his fibromyalgia would cause him to have to lie down around four hours during an eight-hour workday due to pain. (Tr. 65). Plaintiff also asserts that he suffers from pain in his hips, knees, ankles, toes, and wrists, which he alleges affects his sleep, standing, and preparing meals. (Tr. 68).

During the hearing, the ALJ posed a hypothetical question to the VE that included all medically determinable ailments in Plaintiff's RFC. In response, the VE stated that such a hypothetical person could perform a significant number of jobs existing in the national economy. (Tr. 75-78). Plaintiff argues that the existence of his fibromyalgia renders the VE's determination

of sedentary work incorrect, and the ALJ erred by disregarding the VE's response of "No" to this hypothetical question posed by his attorney -- "Assuming on a daily basis, say from the work hours of 9 in the morning 'til 5:00 in the afternoon, [Plaintiff] was fatigued to the point that he's having to lie down and be away from the telephone and be away from his office as much as three to four hours on a regular basis. Would he be able to perform any work that you've named or any work in the national economy?" (Doc. 14, R. 79).

Plaintiff's arguments are misplaced as the ALJ's finding explains that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his severe impairments are not supported by the evidence in the record, and the objective medical evidence does not support a finding of disability. (Tr. 30-31; 601, 607, 614). In June 2020, Plaintiff reported morning stiffness lasting 15 to 30 minutes, but Dr. Weldon noted Plaintiff's joint symptoms stabilized, and that "[his] activities of daily living are carried out without much difficulty." (Tr. 607). The medical records indicate that Plaintiff's musculoskeletal and physical examinations were normal with normal motor strength and tone, normal curvature in his back, and no malalignment or tenderness. (Tr. 31). The medical records further indicate that Plaintiff had full range of motion in his wrists, elbows, shoulders, ankles, knees, hips, and a normal gait and stance. (Tr. 613). Although medical notes from Dr. Weldon dated April, 26, 2021, note continued pain, overall Plaintiff's RA was stable on his medication. (Tr. 900). Dr. Weldon's April 2021 impression notes list fibromyalgia and state Plaintiff "complains of muscular pain in the neck extending into the shoulders as well as widespread generalized pain and severe fatigue." (Tr. 876).  But the impressions alone are not sufficient evidence to establish a medically determinable impairment of fibromyalgia. (Tr. 28).

       **1.**       **The ALJ's Finding That Plaintiff's Claims of Fibromyalgia Are Not Medically Determinable is Supported by Substantial Evidence.**

In order to establish a disability based on testimony of pain, the claimant must satisfy this circuit's well-established pain test: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). An ALJ who discredits subjective testimony, must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987).

The ALJ provided a detailed explanation for the finding that Plaintiff's fibromyalgia was not a medically determinable impairment. (Tr. 29). The ALJ applied the two sets of criteria established by The College of Rheumatology to determine that Plaintiff's fibromyalgia is not medically determinable. (Tr. 28). The first set of criteria, taken from the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (*see* Section II. A of the ruling) establishes that to find that fibromyalgia is medically determinable there must be a history of widespread pain lasting at least 3 months, with a physical examination showing positive tender points at 11 of 18 designated locations and proof that other disorders that could cause the pain have been ruled out. (Tr. 29). The alternative set of criteria, taken from the 2010 American College of Rheumatology Criteria, primarily requires the same evidence but provides alternative diagnostic criteria for reports not mentioning specific tender points; it permits a determination based off a history of widespread pain and repeated manifestation of six or more fibromyalgia symptoms from a list of at least 40 signs. (Tr. 29).

Plaintiff argues that Dr. Weldon's April 2021 impression notes listing fibromyalgia as an ailment, as well as his description of pain, is proof of the disease. (*See* Exhibit 18F). Plaintiff

11

further points to Dr. Weldon's medical notes ranging throughout 2020 stating that he "report[ed] persistent musculoskeletal symptoms in the interim … [and] describe[d] pain in the shoulders, neck," as further proof of the ailment. (*See* Exhibits 5F, 8F, and 10F).  Plaintiff also alleges there is evidence of pain that points to fibromyalgia in Exhibit 5F, dating June 23, 2020, the same month he claimed his disability began. (Doc. 14). However, in his medical records, Plaintiff's rheumatologist states that he "denies warm, tender, swollen joints at this time. Activities of daily living are carried out without much difficulty." (Tr. 607). Plaintiff also alleges evidence of pain in Exhibit 8F where fibromyalgia is first listed as a possible ailment. (Tr. 694). However, as the nurse practitioner noted during Plaintiff's annual physical in August 2020, "[Plaintiff] reports no muscle aches, no muscle weakness, no arthralgias/joint pain, no back pain, and no swelling in the extremities. (Tr. 684). Exhibit 10F and 18F also mention possible fibromyalgia, which Plaintiff cites for his diagnosis; however, a diagnosis alone is insufficient to establish fibromyalgia as a medically determinable impairment. (Tr. 28; *See* SSR 12-2p). Plaintiff fails to explain how his normal physical examination (*See* Exhibit 8F) is consistent with his argument for fibromyalgia. Further, Plaintiff cites no objective medical evidence where any physician pointed to evidence meeting the specific criteria in SSR 12-2p needed to find that fibromyalgia does exist. (Tr. 684-685).

      The ALJ supplied a detailed explanation outlining that Plaintiff's physical examinations fail to show the exclusionary documentation or the requisite number and/or locations of tender-points as required in the 1990 diagnostic criteria, nor does Plaintiff's medical records establish any of the 2010 requirements to determine fibromyalgia. (Tr. 29). Furthermore, the records fail to establish the repeated manifestation of six or more fibromyalgia symptoms as required by the 2010 criteria. (Tr. 29). As there is substantial evidence that Plaintiff's fibromyalgia cannot be established

by medical signs or laboratory findings, the ALJ accurately found fibromyalgia not medically determinable. Finding fibromyalgia not medically determinable, the ALJ correctly instructed the VE on all existing ailments to create a fair RFC. (Tr. 29).

### 2. Even If it Could be Said Fibromyalgia was Present, the ALJ Did Not Err In His Decision Because It Was Not Shown to Be Relevant.

Plaintiff did not cite any evidence that could prove his alleged fibromyalgia was severe enough to be disabling; therefore, the ALJ's RFC is an accurate representation of Plaintiff's labor capabilities. *See, Moore v. Barnhart*, 405 F. 3d 1211 (11th Cir. 2005). Even if the ALJ erred (and to be clear he did not), and medical records did prove fibromyalgia was a medically determinable impairment in this case, Plaintiff failed to show that this ailment would prevent him from performing the sedentary work described in the ALJ's RFC or the VE's job list. (Tr. 75-78). Dr. Russell's assessment stated that Plaintiff has been diagnosed with fibromyalgia in the past; however, the ALJ found this assessment to be of limited usefulness and only mildly persuasive as it is based largely on history obtained from Plaintiff and not objective data or laboratory diagnostic techniques. (Tr. 33, 984-985). Dr. Russell's report contained no lab or X-Ray testing and relied merely on Plaintiff's own claims. (Tr. 975-986). Plaintiff also marked "yes" to being able to complete the following activities: shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, 2 canes, or 2 crutches; walk a block at a reasonable pace; use public transportation; prepare a simple meal; care for personal hygiene; and sort, handle, or use paper/files. (Tr. 981). Of course, the ALJ had already considered Plaintiff's other severe physical impairments, and found that osteoarthritis and rheumatoid arthritis are severe medically determinable impairments that restrict his ability to perform some of the demands of work. (Tr. 29). These considerations left Plaintiff with a considerably restricted RFC, but he was still able to

perform sedentary work, and according to the VE, almost 200,000 jobs would be available within this RFC. (Tr. 77).

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 27, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE